UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRENDA LUCILLE SCHULPIUS,

> Plaintiff,

v.                                                                        Case No. 2:20-cv-360-SPC-NPM

COMMISSIONER OF SOCIAL
SECURITY,

> Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Brenda Lucille Schulpius seeks judicial review of a denial of Social Security disability insurance benefits. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 24). As discussed in this report, the decision of the Commissioner should be affirmed.

## I.    Eligibility for Disability Benefits and the ALJ's Decision

### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a

---

[1] Cited as "Tr." followed by the appropriate page number.

continuous period of not less than twelve months.[2]  The impairment must be severe,
making the plaintiff unable to do her previous work or any other substantial gainful
activity that exists in the national economy.[3]

### B.   Factual and procedural history

Schulpius is fifty-two years old, and she completed some high school and
received a GED. (Tr. 73, 290, 357). She formerly worked as a receptionist, office
manager, and nail technician or manicurist, and at the time of the ALJ hearing in
2019 she worked as a massage therapist. (Tr. 72-81, 369).

On October 14, 2016, Schulpius applied for a period of disability and
disability insurance benefits. (Tr. 10, 290). She initially asserted an onset date of
January 18, 2011, alleging disability due to the following: cervicalgia; ulnar
neuropathy; brachial radial pruritus, nerve; chronic knee pain; bilateral numbness
and tingling arms and legs; neck pain; myalgia; SVT (supraventricular tachycardia);
cervical radiculopathy; degenerative disc disease of the lumbar spine. (Tr. 10, 112,
126).

Schulpius's application was administratively denied initially on January 6,
2017, and upon reconsideration on March 27, 2017. (Tr. 10, 119-124, 125-138). At
Schulpius's request, an Administrative Law Judge ("ALJ") held a hearing on

---

[2]  *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[3]  *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

October 23, 2018, concerning the denial of disability benefits. (Tr. 41-55, 173). Schulpius appeared without counsel at the hearing, but the ALJ continued the hearing to allow Schulpius time to retain an attorney. (Tr. 43-47). The rescheduled hearing took place on July 16, 2019, with Schulpius appearing with counsel. (Tr. 56-111). During the hearing, Schulpius, through her attorney, amended the disability onset date to September 20, 2016. (Tr. 10, 97-98).

The ALJ issued an unfavorable decision on August 21, 2019, finding Schulpius not disabled from the alleged onset date of September 20, 2016, through the date last insured of September 30, 2017. (Tr. 7-21). On March 31, 2020, the administration's Appeals Council denied Schulpius's request for review. (Tr. 1-6). Schulpius then filed a Complaint (Doc. 1) with this Court on May 19, 2020, and the case is ripe for review.

### C. The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; *see also* 20 C.F.R.

§ 404.1512 (providing that the claimant must prove disability); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant."); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work.").

At step one of the evaluation, the ALJ found Schulpius had not engaged in substantial gainful activity from her amended alleged onset date through her date last insured. (Tr. 13). At step two, the ALJ characterized Schulpius's severe impairments as: "cervical and lumbar degenerative disc disease and s/p [status post] ulnar nerve entrapment release surgery." (Tr. 14). At step three, the ALJ determined Schulpius did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 16).

As the predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an [8-]hour workday; sit 6 hours in an 8-hour workday; occasionally climb ladders, scaffolds, ramps, and stairs; never climb ropes; unlimited ability to balance, but only occasionally stoop, kneel, crouch, or crawl; frequently reach overhead bilaterally; frequently use bilateral hands for gross and fine manipulation; and no mental health limitations.

(Tr. 16-17). At step four, relying on the testimony of the vocational expert, the ALJ found Schulpius capable of performing past relevant work as an office manager (DOT[4] 169.167-034) with a sedentary exertion level and an SVP of 7. (Tr. 20). Since the ALJ found Schulpius could perform past relevant work, he did not proceed to step five. The ALJ, therefore, concluded that Schulpius had not been under a disability within the meaning of the Social Security Act from the alleged onset date of September 20, 2016, to the date last insured of September 30, 2017. (Tr. 121).

## II.   Analysis

Schulpius's appeal presents the following issues:

(1)   Whether the ALJ erred in taking testimony at the October 23, 2018 hearing after Schulpius stated she wanted a postponement to obtain an attorney.

(2)   Whether the ALJ erred by not adjudicating Schulpius's disability status after the date last insured.

(3)   Whether the ALJ erred at step two in failing to find Schulpius's mental health limitations severe and in failing to include relevant limitations in the RFC and in hypothetical questions to the vocational expert.

(4)   Whether the ALJ erred in emphasizing Schulpius's return to work following her surgeries.

---

[4] The DOT numbers refer to the Dictionary of Occupational Titles and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled and skilled, with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

(5)     Whether substantial evidence supports the ALJ's residual functional capacity determination that Schulpius can perform light work.

(6)     Whether substantial evidence supports the ALJ's finding that Schulpius had past relevant work as an office manager.

(7)     Whether the ALJ failed to address or refute the prior agency finding that Schulpius could not perform her past relevant work as office manager.

(Doc. 24, pp. 20, 33, 37, 41, 49, 53, 56).

## A.     Standard of review

The Court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While we must view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), a federal court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported

by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

> **B.     Whether the ALJ erred in taking testimony at the October 23, 2018 hearing after Schulpius stated she wanted a postponement to obtain an attorney**

Schulpius contends the ALJ erred in taking her sworn testimony during the October 23, 2018 hearing after she stated she wanted to continue the hearing to obtain an attorney. (Doc. 24, pp. 53-54, 208). The Eleventh Circuit has long recognized that "'[a] Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ.'" *Reynolds v. Soc. Sec. Admin.*, 679 F. App'x 826, 827 (11th Cir. 2017) (quoting *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). An ALJ has a duty to develop a full and fair record whether or not the claimant has representation. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). This duty is heightened "[w]hen the right to representation has not been waived." *Id.* (emphasis added). But to show that an ALJ's questioning violated a claimant's due process rights, the claimant must show prejudice. *Graham*

8

*v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).

The Commissioner concedes that the ALJ should have ceased all questioning once Schulpius requested a continuance to obtain an attorney. (Doc. 24, p. 55). However, Schulpius has not demonstrated, or even attempted to demonstrate, prejudice. (Doc. 24, p. 54). After she requested a continuance to obtain counsel, the ALJ stated Schulpius would only get one continuance and then asked if she had any questions. (Tr. 47). Schulpius did have questions, and this appeared to have prompted discussion beyond the issue of a continuance to obtain counsel. (Tr. 47).

The ALJ and Schulpius generally discussed some medical records but in the context of whether they were in the record. (Tr. 47-49). The ALJ also brought up Schulpius's request to withdraw the hearing, and she explained that she was considering possibly pursuing a closed period of disability. (Tr. 49-51, 430). Even the ALJ acknowledged that their discussion should not delve into much detail because Schulpius intended to obtain representation. (Tr. 51-52). So the ALJ simply made a note to ask her about it during the next hearing. (Tr. 51-52). The ALJ did so at the July 2019 hearing and Schulpius, through her attorney, declined to pursue a closed period of disability. (Tr. 72-73).

Even if the ALJ should have refrained from questioning Schulpius after she requested a continuance to obtain counsel, their discussion mostly concerned

procedural aspects and was not an inquiry into the issue of disability. In fact, neither party has provided, nor has the Court found, authority mandating the ALJ cease all forms of questioning immediately after granting a request to continue. In sum, the ALJ did not err, and even if he did, Schulpius has failed to demonstrate any prejudice flowing from the discussion she had with the ALJ during the October 2018 hearing.

### C.   Whether the ALJ erred by not adjudicating Schulpius's disability status after the date last insured

As previously noted, the ALJ found Schulpius not disabled through a date last insured ("DLI") of September 30, 2017. (Tr. 13). Schulpius contends the ALJ erred by not adjudicating her disability status through to the August 21, 2019 decision because, by her own estimation, her DLI is "likely" September 30, 2019, if her earnings through to the date of the ALJ's decision were added to her earnings record. (Doc. 24, pp. 49-51). While her argument is vague, it appears based on the fact that Schulpius continued to work as a part-time massage therapist at least as of the July 16, 2019 hearing. (Tr. 13, 20). As the ALJ observed: "as long as the claimant continues to work, the date last insured will move to a date later in time and will result in an unadjudicated period." (Tr. 13; *see also* Tr. 20 (same)).

To be entitled to disability insurance benefits, a claimant must establish that she was disabled prior to the expiration of her DLI. 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.315(a)(1), 404.320(b)(2). As the Commissioner points out (Doc. 24, pp. 51-52), and Schulpius does not contest, as of the July 16, 2019 ALJ hearing, the

administration had properly calculated a DLI of September 30, 2017. (Tr. 333 (earnings records); *see also* 20 C.F.R. § 404.130 (discussing how the administration determines insured status); POMS RS 301.120 (same); POMS DI 11005.045 (explaining that the administration's Field Office calculates the DLI)). And Schulpius points to no requirement for an ALJ to recalculate the DLI when subsequently issuing a decision.[5] Nor has Schulpius provided any evidence that the DLI did, in fact, change as of the date of the ALJ's decision. She did not provide an updated insured status report, and there is no indication she ever requested one.

Indeed, if there was any error in this regard, it seems to have been invited by Schulpius because her counsel argued during the ALJ hearing that the issue to be decided was whether she was disabled prior to the DLI of September 30, 2017. (Tr. 69 ("it's just a question of whether we can show that before – into September 2017, those same impairments were present"); *see also* Tr. 68, 73, 99, 445 (Schulpius's counsel repeatedly recognizing September 30, 2017, was the DLI).

Moreover, if the DLI did move to a later time due to continued earnings, the regulatory regime contemplates that a subsequent claim may be filed and any unadjudicated period would be taken up then. *Randolph v. Astrue*, 291 F. App'x 979, 981 (11th Cir. 2008) ("… if the subsequent claim involves deciding whether the

---

[5] Schulpius proposes an unworkable standard whereby ALJs would need to somehow have constant access to real-time earnings data for all claimants after the ALJ hearings.

claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata. Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period.") (quoting Acquiescence Ruling (AR) 97–4(9)); *see also* POMS DI 27510.001 (providing that the last date of the period adjudicated in an ALJ decision is the earlier of the date of decision or the DLI); POMS DI 27510.005 (explaining that unadjudicated period may be adjudicated in subsequent claim); HALLEX I-2-4-40 § J.2. ("In title II cases, if the claimant continues to have insured status after the end of the previously adjudicated period, the unadjudicated period presents a new issue, and the claimant is entitled to a hearing on that new issue.").

Finally, any error related to a potentially evolving DLI was harmless because substantial evidence supports the ALJ's ultimate conclusion that Schulpius was not disabled within the meaning of the Social Security Act. *See Sarli v. Berryhill*, 817 F. App'x 916, 919 (11th Cir. 2020) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding "the ALJ committed harmless error by failing to state the weight it gave to those opinions, as that failure would not have affected the ultimate outcome of ALJ's decision").

Indeed, Schulpius's attempt to assign error does not withstand scrutiny. She claims the ALJ failed to account for the effects of her May 7, 2019 knee surgery and the surgeon's opinions about her functional limitations as of June 5, 2019. (Doc. 24, p. 50). To the contrary, the ALJ accounted for Schulpius's testimony that she was off work for just one week after her May 2019 knee surgery. (Tr. 17, 77). Further, the ALJ afforded little weight to the surgeon's June 2019 opinion because it purported to discuss her status within four weeks of knee surgery, and it was internally inconsistent since it reported Schulpius frequently able to lift and carry fifty pounds or more but limited to standing and walking for two hours in an eight-hour workday. (Tr. 19-21, 1406). Schulpius does not challenge the ALJ's treatment of this opinion on appeal so any such objection is waived. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Notably, Schulpius was engaged in substantial gainful activity during the second and third quarters of 2018—which, by definition, means she was not disabled—and at the time of the June 2019 hearing, she worked about ten hours per week at $30 per hour. (Tr. 14). The ALJ also repeatedly discussed the post-September 2017 evidence, noting, for instance, that Schulpius appeared in February 2018 with "no distress, normal extremities, normal strength, and normal sensation,"

and that there was no follow up treatment for any ulnar nerve impairments after her surgeries. (Tr. 17). Schulpius also testified that she drove to the hearing and drives to work, the store, and doctor's appointments. And she swims in the pool, works five hours a day two days a week, and does dishes, laundry, and grocery shopping. (Tr. 17, 82-83).

In short, the ALJ did not err by incorporating the finding that Schulpius's DLI was September 30, 2017. And even if the ALJ erred by mischaracterizing his ultimate nondisability determination as not applying through to the date of his decision, any such error was harmless because substantial evidence supports the ALJ's ultimate conclusion that Schulpius was not disabled.

### D. Whether the ALJ erred at step two in failing to find Schulpius's mental health limitations severe and in failing to include relevant limitations in the RFC and in hypothetical questions to the vocational expert

Next, Schulpius argues the ALJ erred by failing to find her anxiety was "severe" at step two. (Doc. 24, pp. 41-43). She argues the ALJ's failure to include relevant limitations in the RFC and in hypothetical questions to the vocational expert was not harmless error. (Doc. 24, pp. 43-46). In his RFC determination, the ALJ found "no mental health limitations." (Tr. 17).

A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. § 404.1505(a). This inquiry "acts as a filter" so that insubstantial

impairments will not be given much weight. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). While the standard for severity is low, the severity of an impairment "'must be measured in terms of its effect upon ability to work.'" *D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 945 (11th Cir. 2010) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

"Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the ALJ is only required to consider a claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted). In other words, so long as the ALJ considered Schulpius's severe impairments in combination with her non-severe impairments when formulating the RFC, any potential error at step two is harmless. *See id.* Here, the ALJ determined Schulpius had severe impairments and continued to step three. (Tr. 14-16).

And at step two, the ALJ found anxiety was a medically determinable impairment that did not rise to the "severe" level because it did not cause more than minimal limitation in her ability to perform basic mental work activities. (Tr. 15). In so finding, the ALJ considered four broad areas of mental functioning, known as the "paragraph B" criteria. (Tr. 15-16); 20 C.F.R. § 404.1520a(c)(3). If the ALJ finds that the degree of limitation in these areas of functioning is "none" or "mild," then he will generally conclude that the mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). Here, the ALJ found that Schulpius had only mild limitations in the area of concentrating, persisting or maintaining pace and no limitations in the other three areas of mental functioning (Tr. 15-16). And as the ALJ stated: "The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3." (Tr. 16).

Even though the ALJ's RFC included no mental health limitations, he still considered Schulpius's mental condition, including her anxiety. (Tr. 17-19). For example, he referenced treatment records from November 2016, December 2016, and March 2017—only one of which showed anxious mood while the remaining findings were normal. (Tr. 18-19, 722-723, 833, 1253).

Schulpius cites to treatment notes that assessed her with anxiety and misleadingly claims these notes are from before and after the alleged onset date;

however, these notes range from 2010 to 2013, which is well before the amended onset date of September 20, 2016. (Doc. 24, p. 42 (citing Tr. 490, 493, 496, 504, 508, 532, 536, 1451, 1454)). Schulpius also cited to a biographical form that does not state what she claims—that a history of anxiety was assessed (Tr. 1148)—and she cited to a record assessing a stress reaction, which upon further examination, also states that Schulpius declined both counseling and pharmacologic intervention (Tr. 1311). (Doc. 24, p. 42). In fact, during the July 2019 hearing, Schulpius claimed she has not had any mental health treatment since she was 16 years old. (Tr. 82). Yet this appears untrue as she now points out that she received individual psychotherapy on several occasions in 2016. (Doc. 24, p. 42; Tr. 801-820). While these therapy notes are mostly illegible, Schulpius notably did not mark anxiety as a condition she was experiencing at the time. (Tr. 802).

Finally, Schulpius relies on the opinions from Drs. Walcott and Lipski, the state agency psychologists. (Doc. 24, pp. 43-44). However, as she concedes, they opined that her mental impairments were non-severe. (Tr. 117, 132). And the ALJ gave great weight to these opinions. (Tr. 19).

The ALJ thoroughly considered the medical records and all of Schulpius's impairments, whether severe or non-severe, in formulating the RFC. (Tr. 112-119). While he considered anxiety as an impairment, he did not err by omitting a mental health limitation in the RFC or in questions to the vocational expert. Schulpius did

17

not meet her burden of showing anxiety was severe at step two, nor has Schulpius

shown that her anxiety resulted in any work-related limitations.

### E.   Whether the ALJ erred in emphasizing Schulpius's return to work following her surgeries

Schulpius argues the ALJ erred by emphasizing her return to work after her

surgeries, particularly that Schulpius returned to work one week after her

arthroscopic knee surgery in May 2019. She claims her return to work was not

indicative of an ability to perform full-time work given that she only worked five

hours a day two days a week, and it was below the substantial gainful activity level.

(Doc. 24, pp. 56-57).

First, the ALJ made no error in finding that Schulpius continued to work past

her date last insured. At step one, the ALJ found that, as of 2019, Schulpius worked

ten hours a week as a massage therapist with earnings of $30 per hour (Tr. 13). This

finding is consistent with Schulpius's testimony. (Tr. 74-75). Nor did the ALJ err in

noting that Schulpius returned to work one week after her May 2019 knee surgery

because, again, Schulpius testified to this fact. (Tr. 17, 77).

To the extent Schulpius contends the ALJ "emphasized" her return to work

one week after her knee surgery, there was no error. The ALJ properly discussed

Schulpius's return to work after her 2016 and 2017 ulnar nerve surgeries and her

2019 knee surgery because this demonstrated her ability to engage in work activity

despite her impairments (Tr. 16-20); *see* 20 C.F.R. § 404.1571 ("Even if the work

you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

Schulpius cites only one case for authority, *Williams v. Barnhart*, 395 F. Supp. 2d 1130 (N.D. Ala. 2005), a non-binding decision that Schulpius fails to apply to the circumstances presented here. (Doc. 24, p. 57). *Williams* is inapposite because it was about the credibility of subjective complaints of pain, noting that "if a claimant testifies to disabling pain and satisfies the three-part pain standard, he must be found disabled unless that testimony is properly discredited." *Id.* at 1133. The court found that the ALJ did not properly discredit the claimant's subjective complaints of pain because overwhelming objective medical evidence supported, rather than contradicted, his complaints. *Id.* at 1135. Here, the issue is not whether the ALJ discredited Schulpius's symptoms of pain. Rather, the ALJ took Schulpius's testimony that she returned to work after her surgeries as fact. And he made no error in relying on these facts in his decision.

**F.    Whether substantial evidence supports the ALJ's residual functional capacity determination that Schulpius can perform light work**

Schulpius also argues that substantial evidence does not support the RFC for light work with exceptions because: (1) the ALJ gave no reason for rejecting the state agency physicians' opinions that Schulpius could only occasionally reach overhead and the office manager job requires frequent reaching; (2) in light of the

State agency physicians' opinions and evidence that Schulpius's ability to work as a massage therapist was marginal and significantly affected by her impairments, the ALJ improperly relied on Schulpius's work as a massage therapist to support his finding that she could occasionally lift 20 pounds and frequently lift and carry 10 pounds; and (3) the ALJ overlooked evidence that Schulpius could less than frequently handle and finger. (Doc. 24, pp. 20-27).

State agency consultants are considered experts in Social Security disability evaluation. 20 C.F.R. §§ 404.1527(e), 404.1513a(b)(1). An ALJ must consider these opinions but need not adopt their findings if they are unsupported or inconsistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1513a(b)(1), 404.1520c(a), 404.1527(c)(3), (4). As non-examining sources, the opinions from state agency physicians Dr. Walcott (Tr. 119-121) and Dr. Lipski (Tr. 134-136) are not entitled to any special deference or consideration. Rather, the ALJ need only consider these opinions in accordance with the regulations, which the ALJ did.

The ALJ gave little weight to the opinions of the state agency physicians, remarking as follows:

> I give little weight to the opinions of the state agency physicians who opined the claimant with [sic] a lift and/or carry limitation of 10 pounds occasionally and less than 10 pounds frequently and stand and/or walk two hours in an eight-hour workday (Ex. 1A and 4A). The severely restrictive limitations are not supported by the findings on examinations, mild and stable imaging, and the claimant's return to work as a massage therapist. After the ulnar surgeries, there are no records the claimant followed up with specific treatment and there are no specific findings on examination. The claimant continued to

> work as a massage therapist in January 2017 after the first ulnar surgery in December 2016 and after the second ulnar surgery in April 2017. As to the degenerative disc disease, the claimant demonstrated 5/5 strength and normal gait with mild and stable imaging. In February 2018, the claimant appeared in no distress, normal extremities, normal strength, and normal sensation (Ex. 30F/58).

(Tr. 19). In short, the ALJ found these opinions were neither consistent with nor supported by the other evidence of record, which showed unremarkable findings on examination, mild and stable results of diagnostic testing, a return to work as a massage therapist after both ulnar surgeries, and no follow up treatment after her ulnar surgeries. (Tr. 19).

### 1. Reaching

Schulpius first asserts the ALJ erred in limiting her to frequently reach overhead bilaterally because the state agency physicians, Drs. Walcott and Lipski, opined Schulpius could only occasionally reach overhead bilaterally. (Doc. 24, pp. 20-22; Tr. 120, 135). On December 30, 2016, Walcott limited her to occasional overhead reaching bilaterally due to compression of elbows[6] (Tr. 120-121), and, on March 27, 2017, Lipski similarly limited her due to compression of elbows and degenerative disc disease of the spine (Tr. 135).

Schulpius does not explain what medical evidence supports the proposition that she was more limited in her ability to reach due to elbow compression or

---

[6] This is also known as ulnar nerve compression. (*E.g.*, Tr. 116, 135-136).

degenerative disc disease. Rather, she claims the ALJ's failure to address this specific limitation in his assessment of these opinions was error because it is an important limitation, and the office manager job requires frequent reaching. (Doc. 24, p. 21). It is true the ALJ did not specifically address the overhead reach limitation when he assessed these opinions (Tr. 19); however, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). And by rejecting these opinions, the ALJ need not include limitations in either the RFC or in the hypotheticals posed to the vocational expert based on them. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported").

In any case, the objective medical evidence, as explained by the ALJ, provides substantial evidence for the frequent overhead reaching limitation. First, the ALJ considered the fact that Schulpius returned to work as a massage therapist after her ulnar nerve release surgeries on December 28, 2016 (right ulnar nerve; Tr. 1003-04) and apparent surgery on April 5, 2017 (left ulnar nerve; Tr. 1249-31).[7] (Tr. 18-19).

---

[7] As the ALJ noted, the records reveal that Schulpius was scheduled for a left ulnar nerve release on April 5, 2017, but there do not appear to be any notes from the April 2017 surgery or any additional medical records related to the left ulnar entrapment. (Tr. 18). Only a June 2017 treatment note characterized her as status post left ulnar nerve decompression. (Tr. 1312).

Notably, Walcott and Lipski did not have the benefit of reviewing the full medical evidence of both ulnar nerve surgeries or the respective follow-up visits. And the ALJ did not err in considering Schulpius's return to work as a massage therapist, as this was an uncontroverted fact that Schulpius even testified about during the hearing. (Tr. 18-19, 74, 81, 90).

The medical records also indicate either improvement or a lack of specific treatment. A follow up treatment note about one month after her first ulnar release indicated significant improvement. (Tr. 1048). After both surgeries were completed, the ALJ correctly noted that there were no records Schulpius had follow-up visits for specific treatment and there were no specific findings on examination. (Tr. 19; *see* Tr. 1290-91, 1308, 1312, 1314, 1331). While Schulpius complained of numbness in her left upper extremity, some swelling and pain in one digit, and some pain and a lump at the surgical site, the June 13, 2017 treatment record noted that she was not specifically treated for these symptoms during this visit, but rather was advised to follow up with her surgeon, Dr. Dzwierzynski. (Tr. 1311, 1315). But there does not appear to be any follow-up notes with Dr. Dzwierzynski after this date. *See* 20 C.F.R. § 404.1529 (noting treatment is a factor the agency considers); *see also Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006) (gaps in treatment history supported the ALJ's denial of benefits); *Blacha v. Sec'y of Health & Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (failure to seek treatment "undercuts

complaints of disabling pain").

Moreover, the ALJ considered Schulpius's degenerative disc disease in depth. (Tr. 18). In discounting the state agency opinions, the ALJ remarked on Schulpius's degenerative disc disease, noting that records demonstrated that she had 5/5 strength and normal gait with mild and stable imaging. (Tr. 18-19, 833, 1022). In February 2018, Schulpius appeared in no distress, normal extremities and back, normal strength, and normal sensation (Tr. 19, 1606). And she was recommended conservative treatment. (Tr. 18, 1022-23); *see Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008) (per curiam) (conservative treatment tends to negate a claim of disability). Not only does Schulpius fail to challenge these other reasons for discounting the opinions from Walcott and Lipski, but the ALJ sufficiently articulated reasons for rejecting these opinions. *See generally D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (per curiam) (rejecting argument that ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it.").

### 2.  *Lifting and carrying*

Schulpius similarly claims the ALJ erred in finding she could lift and carry 20 pounds occasionally and 10 pounds frequently in light of the state agency physicians' opinions. For the same reasons discussed above, the ALJ did not err in

discounting those opinions. Central to this particular argument is Schulpius's assertion that the ALJ improperly relied on her work as a massage therapist. But, as noted above, this was an uncontroverted fact. In fact, Schulpius returned to work as a massage therapist after both of her ulnar nerve surgeries, she continued to work past her date last insured including at substantial gainful activity levels during 2018, and she returned to work again after her 2019 arthroscopic knee surgery. (Tr. 17, 19); *see also* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Schulpius has not shown that the ALJ erred in his RFC limitation for lifting and carrying. And any would be error harmless because the ALJ found she could work as an office manager, which is a sedentary occupation that involves only occasional lifting up to 10 pounds and frequently lifting a negligible amount. DOT 169.167-034, 1991 WL 647430.

### 3. *Handling and fingering*

Schulpius further contends the ALJ should have included additional limitations for handling and fingering. (Doc. 24, pp. 23-27). But none of the evidence Schulpius cites ascribes any specific functional limitations—none of these records contain a medical opinion that Schulpius could handle or finger only occasionally or less.

The ALJ acknowledged Schulpius had some manipulative limitations because

he found that her severe impairments at step two included status post ulnar nerve entrapment release surgery, and he limited her to no more than frequent use of bilateral hands for gross and fine manipulation. (Tr. 14, 17). In his RFC explanation, the ALJ noted that Schulpius reported numbness and tingling in her arms and legs that were related to a motor vehicle accident in 2011. (Tr. 18, 698). He noted her August 2016 EMG diagnostic study revealed mild bilateral ulnar nerve entrapments, left slightly greater than right (Tr. 17, 701). Schulpius initially declined medication and a referral to an orthopedic surgeon and instead, she reported that she planned to see her chiropractor. (Tr. 17, 704). During an October 2016 follow-up visit, Schulpius's examination revealed normal strength of bilateral hands despite her reports of episodic weakness with hand gripping. (Tr. 18, 712). During a subsequent October 2016 visit, Dr. Dzwierzynski examined Schulpius, who demonstrated grip strength of 30 pounds on the right hand and 15 pounds on the left hand (Tr. 18, 717). In December 2016, Schulpius showed 5/5 strength in the upper extremities and slight decreased sensation in the fifth digits bilaterally (Tr. 18, 833). Finally, the ALJ considered her ulnar neuropathy and surgeries, as the Court already discussed. (Tr. 18).

Schulpius has not shown that additional hand-related limitations were warranted. And even though she does not expressly assert that the ALJ cherry-picked records, that is the gist of her argument because rather than attack each treatment

record or other support the ALJ pointed to, she herself cherry-picks portions of the record she claims support her positions. Noticeably absent from her discussion of handling and fingering is the state agency physician opinions she previously and implicitly claims should have been afforded greater weight. Yet, were the ALJ to have afforded greater weight to these opinions, as she previously argued, they would have contradicted her position on handling and fingering because both Walcott and Lipski opined Schulpius could frequently handle, feel, and finger bilateral hands. (Tr. 120, 135).

### G.   Whether substantial evidence supports the ALJ's finding that Schulpius had past relevant work as an office manager

Schulpius also claims the ALJ erred by characterizing her past relevant work as "office manager." Rather, she claims she performed a composite job of tax preparer, secretary, and receptionist and did not perform the key components of the office manager job, such as supervision. (Doc. 24, p. 33-35). This argument is without merit.

Past relevant work is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). A composite job is one that has "significant elements of two or more occupations and, as such, [has] no counterpart in the DOT." SSR 82-61, 1982 WL 31387, *2. Past relevant work may qualify as a composite job "if it takes multiple DOT occupations to locate the main

27

duties of the [past relevant work] as described by the claimant." POMS DI 25005.020. When determining whether a claimant can perform past relevant work, the ALJ may consult vocational experts and the DOT, among other resources. 20 C.F.R. § 404.1560(b)(2). In fact, the "claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, *3; *see Cantu v. Comm'r of Soc. Sec.*, No. 2:19-cv-832-MRM, 2021 WL 960686, *4 (M.D. Fla. Mar. 15, 2021).

Schulpius claimed to be an office manager in reports she submitted to the administration. (Tr. 357, 369, 372). In one report, she described her job duties as: "answer phones, made appointments, used computer to enter tax return information, filed, prepped mail ordered supplies, greeted clients, made copies." (Tr. 372). And during the hearing, Schulpius testified about her job at MacAfee and Associates, an accounting business, and stated that she was an "office manager." She explained her duties included making appointments, doing copying, collating, and entering taxes, and "pretty much [running the] office."[8] (Tr. 77-78). Schulpius's description of her past work is generally consistent with the DOT's description of the office manager

---

[8] Schulpius's testimony that she "pretty much ran [the accounting] office" (Tr. 78) seems to conflict with her report that she did not supervise other people and was not a lead worker (Tr. 372). In fact, she testified that she had to supervise ("babysit") her boss and "keep him on track." (Tr. 78).

job. DOT 169.167-034, 1991 WL 647430. While Schulpius may not have been a supervisor in a traditional sense (Tr. 372), she performed similar functions and many other duties listed in the DOT description, such as bookkeeping, filing, and other clerical services. In sum, the ALJ made no error in relying on Schulpius's own reports and testimony to find that she worked as an office manager. *See Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 832 (11th Cir. 2006) ("The ALJ did not err in concluding that Fries's past relevant work was as a receptionist. . . because Fries testified that she worked as a receptionist before she was injured.").

The ALJ not only relied on Schulpius's reports and testimony, but also on the vocational expert. *See* 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e). And at a minimum, the vocational expert considered office manager and massage therapist past relevant work. (Tr. 101). Schulpius does not discount the substantial evidence provided via the expert testimony. In sum, Schulpius's argument is without merit.

### H.  Whether the ALJ failed to address or refute the prior agency finding that Schulpius could not perform her past relevant work as office manager

Schulpius claims the ALJ was bound by a personalized disability explanation from the reconsideration level that found she was "not able to return to [her] past work as an office manager." (Doc. 24, pp. 37, 40; Tr. 138). Without any relevant authority, she claims the ALJ was required to reject or address this conclusion but failed to do so. (Doc. 24, p. 37). But this is not true.

The regulations provide:

The issues before the [ALJ] include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in [the claimant's] favor. However, if evidence presented before or during the hearing causes the [ALJ] to question a fully favorable determination, he or she will notify [the claimant] and will consider it an issue at the hearing.

20 C.F.R. § 404.946(a); *see also* HALLEX I-2-2-1, 1992 WL 1484401 (last updated Jan. 13, 2016) (providing same). The ALJ adhered to this regulation—the hearing notices to Schulpius specifically informed her that the ALJ would consider whether she could "do the kind of work [she] did in the past." (Tr. 176, 212, 249). So, the ALJ was not bound by the reconsideration determination and properly considered the issue of whether Schulpius could perform her past relevant work.

## III.    Conclusion

Upon consideration of the submission of the parties and the administrative record, the decision of the Commissioner is supported by substantial evidence. Accordingly, it is **RESPECTFULLY RECOMMENDED**:

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in Defendant's favor.

Reported in Fort Myers, Florida on August 5, 2021.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**